**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for Axia Realty, LLC*
*Debtor and Debtor-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
In re:                                                                  :
                                                                            :      Chapter 11
AXIA REALTY, LLC                                              :
                                                                            :      Case No.: 20-12511 (    )
                                            Debtor.           :
---------------------------------------------------------------- x

**DECLARATION OF ANTONIA MILONAS PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 OF THE LOCAL BANKRUPTCY RULES FOR THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

I, Antonia Milonas, declare, pursuant to section 1746 of title 28 of the United States Code, that:

1. Pursuant to the terms of the operating agreement of Axia Realty, LLC ("Axia" or "Debtor"), a New York limited liability company, I am the sole manager of Axia as a result of the fact that my husband, Spiros Milonas, is mentally incapacitated. The Debtor intends to file a voluntary chapter 11 petition with the Clerk of this Court on or about October 26, 2020 (the "Petition Date"). I am duly authorized to make this declaration (the "Declaration") on behalf of the Debtor.

2. I am generally familiar with the Debtor's day to day operations, business, and financial affairs. As further set forth below, I am not in possession or control of the Debtor's books and records as my husband's daughters from a prior marriage have wrongfully hijacked the Debtor's operations; have withheld financial information regarding the Debtor's operations from me and have been systematically manipulating the Debtor for their own benefit. My

husband, the Debtor's other 50% equity owner, has been judicially declared unable to manage his own affairs. I am above eighteen years of age and I am competent to testify.

3.      I submit this Declaration in accordance with Rule 1007-2 of the Local Rules of this Court (the "Local Bankruptcy Rules") to assist this court (the "Court") and parties in interest in understanding the circumstances that compelled the commencement of the chapter 11 case, and in support of the Debtor's petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, documents available to me and my discussions with various professionals familiar with the Debtor and the issues pertaining to the Debtor's current financial condition. As set forth above, my knowledge of the Debtor's financial affairs has been restricted by my husband's daughters. My testimony is as complete as possible under such circumstances. If called as a witness, I could and would testify competently to the facts set forth in this Declaration.

5.      Parts I through III of this Declaration provide an overview of the Debtor's business, events giving rise to the commencement of this chapter 11 case and the Debtor's capital structure. Part IV sets forth the information required by Local Bankruptcy Rule 1007-2.

### I. THE DEBTOR'S BUSINESS

6.      The Debtor is the sponsor of a boutique luxury condominium development located at 40 East 72nd Street, New York, NY (the "Property"). Commencing around 2015, the Debtor embarked on a total renovation of the Property and converted the Property to a six unit condominium development. The Debtor is the sponsor of the condominium plan which was approved by the New York Attorney General in 2017.

7.      Pursuant to the Debtor's amended and restated operating agreement (the "Operating Agreement"), my husband, Spiros Milonas ("Spiros") and I, each own 50% of the

Debtor's membership interest. The Operating Agreement provides that both myself and Spiros are the Debtor's co-managers. However, in August 2020, Spiros was judicially declared unable to manage his affairs pursuant to an Article 81 proceeding under the Mental Hygiene Law. As a result, pursuant to various provisions of the Operating Agreement, I am now the Debtor's sole manager.

## II. EVENTS LEADING TO THE CHAPTER 11 CASE

8. Prior to Spiros being declared unable to manage his affairs, the Debtor sold three (3) of the six (6) condominium units to arm's length buyers and received total proceeds of approximately $35,000,000. From the sale proceeds the Debtor's construction loan was fully paid and the Debtor retained approximately $4,000,000. Spiros' daughters, who took *de facto* control of Spiros' business interest, transferred the $4,000,000 to pay a questionable unsecured note allegedly issued in favor of an entity controlled by Spiros and/or his daughters.

9. I never approved the transfer of these funds or the alleged loans from the controlled entity as I believe any monies which Spiros or entities under his control contributed to the Debtor were in the nature of capital contributions and not loans. In addition, in August 2018, Spiros' daughters had Spiros execute a confession of judgment on Axia's behalf in the amount of $2,226,599 in favor of Phoenix Capital Finance Limited ("Phoenix"), an affiliate of the Ionian Group, Spiros' family conglomerate, at a time when I believe Spiros was mentally incapacitated. This confession of judgment was entered *ex parte* with the New York Supreme Court, County Clerk (the "Phoenix Judgment").

10. The Debtor still owns three (3) residential condominium units: unit 1, unit 2 and unit 6. Spiros and I reside in unit 6. The Debtor also owns unit 1A which is designated as an office under the Debtor's condominium offering plan. Prior to the Covid-19 pandemic, these condominium units had an estimated value in excess of $45,000,000. The Debtor's condominium

units are not subject to a mortgage. They are only subject to disputed judicial liens, common charges and real estate taxes.

11. Pursuant to a prenuptial agreement, Spiros is required to pay the common charges on the Debtor's units plus other charges, including real estate taxes relating to these units.

12. Spiros' daughters have stripped him of assets and have caused Spiros and the Debtor to default on the payment of all charges on the Debtor's remaining units, except for certain charges relating to unit 6 (penthouse) in which Spiros and I reside. The remaining units owned by the Debtor are currently vacant.

13. The owners of the three units the Debtor previously sold on the open market commenced an action against the Debtor and obtained a judgment for unpaid common charges in the amount of $205,502.44. In addition, the Phoenix Judgment constitutes a judgment lien on the Debtor's units. The Debtor also owes unpaid real estate taxes on its units.

14. The Debtor intends to utilize the Chapter 11 process to obtain control of its operations, commence an adversary proceeding seeking to compel Spiros to pay or reimburse Axia for all Axia obligations for which Spiros is responsible and to obtain recovery of any monies improperly transferred to affiliates of the Ionian Group or others, including Levant Partners which received approximately $4,000,000 from the Debtor in 2017. In addition, the Debtor intends to challenge the Phoenix Judgment as a fraudulent transfer and seek debtor in possession financing to satisfy the unpaid common charges and retain an experienced luxury broker to market one of more of its unsold units other than unit 6.

### III. **PRE-PETITION CAPITAL STRUCTURE AND INDEBTEDNESS**

15. As noted, the Debtor is a privately held limited liability company. I and Spiros, each own 50% of the Debtor's membership interest. To the best of my knowledge, the Debtor has no secured debt other than the Phoenix Judgment, which is a judicial lien, the judgment on

account of unpaid common charges and real estate taxes believed to be in the amount of approximately $500,000.

16. To the best of my knowledge, the Debtor has little or no cash.

## IV. INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2

17. I have been advised that Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor which is set forth below.

18. In accordance with Local Bankruptcy Rule 1007-2(a)(3), there has been no prepetition committee of creditors formed in this chapter 11 case.

19. In accordance with Local Bankruptcy Rule 1007-2(a)(4), **Exhibit A** hereto is a list containing the names, addresses, and, where available, telephone and facsimile numbers of the creditors believed to be holding the twenty (20) largest unsecured claims (excluding insiders) against the Debtor.

20. In accordance with Local Bankruptcy Rule 1007-2(a)(5), **Exhibit B** hereto is a list containing the names, addresses, and, where available, telephone and facsimile numbers of the creditors believed to be holding the five (5) largest secured claims against the Debtor.

21. In accordance with Local Bankruptcy Rule 1007-2(a)(6), **Exhibit C** hereto is a list containing a summary of the Debtor's assets and liabilities.

22. To the best of my knowledge, none of the Debtor's property is in the possession or control of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

23. The Debtor is not a party to any leases.

24. The Debtor's known assets, aside from claims it may have, consist of the condominium units located at 40 East 72nd Street, New York, NY. To the best of my knowledge,

the Debtor's books and records are located at 1700 Broadway, Suite 1700 aka Five Columbus Circle.

25. In accordance with Local Bankruptcy Rule 1007-2(a)(11), **Exhibit D** hereto is a list of litigation commenced against the Debtor.

26. As set forth above, the Operating Agreement provides the Debtor is co-managed by myself and Spiros. Because of Spiros' current condition, I am the Debtor's sole manager and in charge of all aspects of the Debtor's business. The Debtor intends to continue to operate as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

27. The Debtor does not have any employees and will have no payroll over the next 30-day period following the Petition Date.

28. The Debtor does not anticipate any cash receipts or disbursements over for the 30-day period following the Petition Date. The Debtor will likely seek to obtain debtor-in-possession financing to pay the outstanding common charges on the Debtor's retained units, real estate taxes and to cover certain operating expenses during the chapter 11 case.

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 23rd day of October 2020

/s/ Antonia Milonas
Antonia Miloans