**EXHIBIT D**

# DEBTOR IN POSSESSION LOAN AGREEMENT

THIS DEBTOR IN POSSESSION LOAN AGREEMENT (this "**Agreement**"), dated November___, 2020, is entered into between Axia Realty, LLC, a New York limited liability company ("**Debtor**") and Michael Katz Profit Sharing Plan, a ____ ("**Lender**"), on the other hand.

WITNESSETH:

WHEREAS, on October 26, 2020 (the "**Petition Date**") the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of New York (the "**Court**");

WHEREAS, the Debtor has requested that Lender make a DIP Loan (as defined hereinafter) to the Debtor subject to the terms and conditions set forth herein; and

WHEREAS, Lender is willing, on the terms and conditions hereinafter set forth, to make such a DIP Loan.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intending to be legally bound hereby, the parties hereto agree as follows:

SECTION 1. DEFINITIONS.

1.1    Defined Terms. Certain terms are defined in the text of this Agreement or the above recitals. In addition, as used in this Agreement, the following terms shall have the following meanings:

"**Additional DIP Loan**" has the meaning given to it in Section 2.1.

"**Affiliate**" means any Entity directly or indirectly, through one or more intermediaries, controlling, controlled by or under common control with Debtor.

"**Agreement**" means this Debtor in Possession Loan Agreement, as it may hereafter be amended, modified, extended, restated or supplemented from time to time.

"**Avoidance Actions**" means causes of action of Debtor's estate arising under Sections 544, 545, 547, 548 and 550 of the Bankruptcy Code.

"**Bankruptcy Code**" means Title 11 of the United States Code, as may hereafter be amended from time to time.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as may be amended from time to time.

"**Business Day**" means any day on which banks are required to be open in New York City.

"**Chapter 11 Case**" means the voluntary chapter 11 bankruptcy case of the Debtor, titled *In re Axia Realty, LLC*, Case No. 20-12511 (Bankr. S.D.N.Y. 2020).

"**Collateral**" means the Real Property.

"**Common Charges**" means the amounts payable to the Condominium for the management, operation and maintenance of the Building in which the Real Property is located.

"**Condominium**" means the residential condominium known as the "40 East 72nd Street Condominium" that was created on or about April 18, 2017, by the filing of a declaration pursuant to Article 9-B of the New York Real Property Law for the purpose of establishing a plan for condominium ownership of the building located at 40 East 72nd Street, New York, New York (the "**Building**").

"**Default**" means any event specified in Section 7 hereof, whether or not any requirement in connection with such event for the giving of notice, lapse of time, or happening of any further condition has been satisfied.

"**Default Rate**" has the meaning given such term in Section 3.2(b) hereof.

"**DIP Loan**" means, collectively, the Tranche A Loan, the Tranche B Loan and the Additional DIP Loan, if any.

"**DIP Loan Commitment**" means the commitment of the Lender to make the Tranche A Loan, the Tranche B Loan and the Additional DIP Loan, if any.

"**DIP Loan Documents**" means, collectively, this Agreement, any Interim DIP Order, the Final DIP Order, the Mortgage, and each other order of the Court and each other instrument, document or agreement required to be delivered pursuant to this Agreement or any order of the Court or delivered in connection with this Agreement, including without limitation any documents or instruments executed or delivered by any Entity from time to time as security for the DIP Obligations, in each case as amended, modified, waived, substituted, replaced or extended from time to time.

"**DIP Obligations**" means all present and future obligations, indebtedness and liabilities, and all renewals and extensions of all or any part thereof, of the Debtor to Lender arising from, by virtue of, or pursuant to this Agreement, any DIP Loan Documents, and any and all renewals and extensions thereof or any part thereof, or future amendments thereto, all interest accruing on all or any part thereof and the reasonable attorneys' fees incurred by Lender for the negotiation and preparation of this Agreement and consummation of the same, execution of waivers, amendments and consents, and in connection with the enforcement or the collection of all or any part thereof, and reasonable attorneys' fees incurred by Lender in connection with the

enforcement or the collection of all or any part of the DIP Obligations during the continuance of a Default, in each case whether such obligations, indebtedness and liabilities are direct, indirect, fixed, contingent, joint, several or joint and several.

"**Entity**" means an individual, partnership, limited liability company, joint venture, corporation, trust, Governmental Unit, unincorporated organization, and government, or any department, agency, or political subdivision thereof.

"**Final DIP Order**" means the order entered by the Court upon sufficient notice as required by Bankruptcy Rule 4001, in form and substance satisfactory to Lender, in its sole and absolute discretion, approving the DIP Loan and the DIP Loan Documents on a final basis.

"**GAAP**" means generally accepted accounting principles applied on a consistent basis.

"**Governmental Unit**" means any state, commonwealth, federal, foreign, territorial, or other court or government body, subdivision, agency, department, commission, board, bureau, or instrumentality of a governmental body.

"**Highest Lawful Rate**" means, at the particular time in question, the maximum rate of interest which, under applicable law, Lender is then permitted to charge on the DIP Obligations. If the maximum rate of interest which, under applicable law, Lender is permitted to charge on the DIP Obligations shall change after the date hereof, the Highest Lawful Rate shall be increased or decreased automatically, as the case may be, from time to time as of the effective time of each change in the Highest Lawful Rate without notice to the Debtor.

"**Interim DIP Order**" means any order entered by the Court with respect to the DIP Loan or the DIP Loan Commitment prior to the Final DIP Order, in form and substance satisfactory to Lender, in its sole and absolute discretion, approving the DIP Loan and the DIP Loan Documents on an interim basis.

"**Law**" means any constitution, statute, law, ordinance, regulation, rule, order, writ, injunction, or decree of any Governmental Unit.

"**Lien**" means any properly filed and perfected mortgage, pledge, security interest, encumbrance, lien, or charge of any kind, including without limitation any agreement to give or not to give any of the foregoing, any conditional sale or other title retention agreement, any lease in the nature thereof, and the filing of or agreement to give any financing statement or other similar form of public notice under the Laws of any jurisdiction (except for the filing of a financing statement or notice in connection with an operating lease).

"**Material Adverse Change**" means any circumstance or event that, by itself or aggregated together with all other events or circumstances, is or would reasonably be expected to materially and adversely affect the validity or enforceability of or any rights of Lender under the DIP Loan Documents, the Interim DIP Order, or the Final DIP Order.

"**Mortgage**" means the Mortgage dated as of November __, 2020 granted by Debtor to Lender on the Real Property and held by Lender to secure the DIP Obligations.

"**Permitted Liens**" means:

(a) any Lien in favor of Lender pursuant to the DIP Loan Documents to secure the DIP Obligations hereunder;

(b) Liens existing on the Petition Date, provided, however, that, pursuant to Section 364(d)(1), the Final DIP Order shall provide that all such liens shall be rendered junior and second to the liens and security interests granted to Lender herein; provided, however, that on an interim basis, the Lender is prepared to accept the lien priority established by the Interim DIP Order entered in a form that is satisfactory to the Lender in its sole discretion;

(c) Liens on (i) real estate for real estate Taxes not yet delinquent and (ii) Liens for Taxes, assessments, governmental charges, levies or claims that are being diligently contested in good faith by appropriate proceedings and for which adequate reserves shall have been set aside on the Debtor's books, but only so long as no foreclosure, restraint, sale or similar proceedings have been commenced with respect thereto; and

(d) Liens of carriers, warehousemen, mechanics, laborers and materialmen and other similar Liens incurred in the ordinary course of business for sums not yet due or being contested in good faith, if such reserve or appropriate provision, if any, as shall be required by GAAP shall have been made therefor.

"**Permitted Real Property Sale**" means a transfer, directly or indirectly, of the Debtor's right, title or interest in, to or under any of the Real Property in which 100% of the net cash proceeds of such sale will be used to pay the DIP Obligations in accordance with Section 2.7(b).

"**Real Property**" means those certain real properties (individual condominium units located at 40 East 72nd Street, Block 1386 Lot 1201, Block 1386 Lot 1202, Block 1386 Lot 1203, Block 1386 Lot 1207) owned by the Debtor and defined in the Mortgage as the "Property".

"**Superpriority Claims**" means any debt or other claim arising out of credit obtained or debt incurred by the Debtor having priority in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code.

"**Tax**" or "**Taxes**" means all taxes, assessments, imposts, fees, or other charges at any time imposed by any Laws or Governmental Unit.

"**Tax Code**" means the Internal Revenue Code of 1986, as amended.

"**Tranche A Loan**" has the meaning given such term in Section 2.1(a) hereof.

"**Tranche B Loan**" has the meaning given such term in Section 2.1(b) hereof.

"**UCC**" means the Uniform Commercial Code as adopted in the State of New York as of the date of this Agreement.

"**U.S. Trustee**" means the United States Trustee for Region 2.

1.2     Other Definitional Provisions.

(a)     Unless otherwise specified therein, all terms defined in this Agreement shall have the defined meanings when used in any other DIP Loan Document or any certificate or other document made or delivered pursuant hereto.

(b)     As used herein, in any other DIP Loan Document and in any certificate or other document made or delivered pursuant hereto, accounting terms relating to a Debtor not defined herein, and accounting terms partly defined herein to the extent not defined, shall have the respective meanings given to them under GAAP.

(c)     The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section, subsection, schedule and exhibit references are to this Agreement unless otherwise specified.

(d)     The meanings given to terms defined herein shall be equally applicable to the singular and plural forms of such terms.

SECTION 2. DIP LOAN.

2.1     <u>DIP Loan Commitment.</u> Subject to and in accordance with the terms and conditions of this Agreement, Lender shall make advances to the Debtor, as follows:

(a)     Upon entry of the Interim DIP Order, in an aggregate principal amount of up to $1,500,000.00 ("**Tranche A Loan**"); and

(b)     Upon entry of the Final DIP Order, in an aggregate principal amount of up to $1,000,000.00 ("**Tranche B Loan**").

At any time after entry of the Final DIP Order and prior to the expiration of the Term, provided no Default has occurred, and subject to and in accordance with the other terms and conditions of this Agreement, at Debtor's option, Debtor may request additional DIP Loans in an aggregate principal amount of up to $500,000.00 (the "**Additional DIP Loan**"). As long as the Debtor is in compliance with the DIP Loan Documents, the Lender shall be obligated to make the Additional DIP Loan.

After repayment, DIP Loans may not be re-borrowed.

2.2     Term. The Term of the DIP Loan Commitment shall be from the date of entry of the Interim DIP Order through the earliest to occur of (i) the sale of any of the Real Property; (ii) the closing of a sale of all or substantially all of the assets of the Debtor pursuant to Section 363 of the Bankruptcy Code; (iii) the second anniversary of the date of entry of the Interim DIP Order; and (iv) the occurrence of a Default (the "**Term**"). Upon the expiration of the Term, unless otherwise extended by Lender, in its sole discretion, all amounts due and owing under the DIP Loan, including interest and fees, shall immediately become due and owing to Lender.

2.3     Advances. Advances under the DIP Loan shall be made if and when provided under the Interim DIP Order and the Final DIP Order, as applicable, subject to the terms and conditions set forth therein and herein and subject to the conditions provided in Sections 3.4 and 3.5.

2.4     Use of Proceeds. The proceeds of the DIP Loan shall be used by the Debtor solely for the following:

a.  Payment of unpaid prepetition Common Charges, late fees and legal fees;
b.  Payment of unpaid real estate taxes on the Real Property;
c.  Payment of postpetition Common Charges;
d.  Payment of compensation and reimbursement of expenses to professionals employed by the Debtor under sections 327(a), 328 or 1103(a) of the Bankruptcy Code to the extent such fees and expenses are allowed and payable pursuant to an order of the Court;
e.  Payment of fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. §1930(a) and section 31 U.S.C. § 3717;
f.  Payment of the costs and expense of any necessary construction and/or remediation of the Real Property or other work required to be performed at the Building by the Debtor in its capacity as sponsor;
g.  Payment of the premiums for insurance on the Real Property; and,
h.  Payment of monthly interest payments, fees, including legal fees, and other amounts due to the Lender as and when required pursuant to this Agreement.

2.5     Collateral. As provided in the Final DIP Order, all indebtedness, including DIP Obligations under this Agreement and the other DIP Loan Documents, shall be secured by automatically perfected security interests and Liens granted pursuant to Section 364(d)(1) of the Bankruptcy Code, with first priority on all Collateral.

2.6     Monthly Interest Payments. The Debtor shall pay monthly interest payments to the Lender in accordance with the terms of this DIP Loan, as computed in accordance with Section 3.2 of this Agreement.

2.7     Prepayments.

(a)     Optional Prepayments. The unpaid principal amount of the Tranche A Loan, the Tranche B Loan or the Additional DIP Loan, if any, together with any and all accrued interest thereon through the date of prepayment, may be prepaid in full or in part at any time after six (6) months from the date of the making of the applicable DIP Loan without premium or penalty.

Prior to the expiration of six (6) months from the date of the making thereof, prepayment may be made only with the payment of a premium of additional interest equal to the interest which otherwise would have been paid hereunder but for such prepayment during the first six (6) months. Any prepayment permitted hereunder shall be made after five (5) days' written notice to Lender and shall include the applicable prepayment premium.

(b) <u>Mandatory Prepayments</u>. If any net cash proceeds are received by or on behalf of the Debtor with respect to the consummation of a Permitted Real Property Sale, the Debtor shall cause to be prepaid an aggregate principal amount of the DIP Loans equal to 100% of all such net cash proceeds as promptly as reasonably practicable, but in any event prior to the date which is three (3) Business Days after receipt of such net cash proceeds by or on behalf of the Debtor.

(c) <u>Application of Prepayments</u>. All prepayments shall be accompanied by all accrued interest thereon and shall be applied first to payments of interest, expenses, attorneys' fees and penalties hereunder, and then to installments of principal in the inverse order of maturity of the DIP Loans in inverse order of maturity. The term prepayment shall include, to the extent permitted by law, payment following default and acceleration, condemnation or casualty.

SECTION 3. GENERAL PROVISIONS APPLICABLE TO DIP LOAN.

3.1 <u>No Note.</u> This Agreement, any Interim DIP Orders, the Final DIP Order and the other DIP Loan Documents fully evidence and memorialize the DIP Obligations, and no other instrument is required to evidence such DIP Obligations.

3.2 <u>Interest Rates and Fees.</u>

(a) <u>Interest Rate.</u> Subject to <u>Section 3.2.(b)</u> hereof, the DIP Loan shall bear interest at a rate of 9.50 percent (9.50%) per annum, payable monthly in arrears (the "**Interest Rate**").

(b) <u>Default Rate.</u> Upon the occurrence and during the continuance of a Default, and provided that Lender shall have provided a Notice of Default as provided in <u>Section 7.2</u> and any applicable cure period has expired, the DIP Loan and all other amounts unpaid and outstanding under this Agreement shall bear interest at a rate equal to 18.00 percent (18.00%) per annum or the Highest Lawful Rate, whichever is less (the "**Default Rate**").

(c) <u>Computation of Interest.</u> Interest on the Advances shall be computed on the basis of a year of 365 days and the actual days elapsed (including the first day but excluding the last day) occurring in the period for which such interest is payable, unless such calculation would exceed the Highest Lawful Rate, in which case interest shall automatically be reduced to the Highest Lawful Rate.

(d) <u>Facility Fee.</u> The Debtor shall pay Lender a facility fee equal to 2.00 percent (2.00%) of the DIP Loan Commitment, which shall be fully earned on the date of entry of the Interim DIP Order by the Court and payable on the date of funding of the Tranche B Loan from the proceeds thereof.

3.3 Collateral.

(a) Grant of Security Interest. The Debtor hereby grants to Lender a first priority lien and security interest in all of its Collateral, including without limitation pursuant to the Mortgage, as security for the full and prompt payment in cash and performance of the DIP Obligations.

3.4 Conditions to Effectiveness. This Agreement shall be effective on the date on which all of the following conditions have been first satisfied, except as otherwise agreed in writing between Debtor and Lender:

(a) The Lender shall have received counterparts of the DIP Loan Documents properly executed by the Debtor in form and substance reasonably satisfactory to the Lender; and

(b) The Court shall have entered the Interim DIP Order approving the DIP Loan and the DIP Loan Documents on an interim basis not later than ten (10) days after the Debtor's filing of a motion for approval thereof; and

(c) The Court shall have entered the Final DIP Order approving the DIP Loan and the DIP Loan Documents on a final basis not later than fourteen (14) days after entry of the Interim DIP Order, and no stay of the Final DIP Order has been granted by a court of competent jurisdiction and the Final DIP Order includes a section 364(e) finding in favor of the Lender.

3.5 Conditions to Making of all DIP Loans. The obligation of Lender to make any DIP Loan on any date is subject to satisfaction of the following conditions precedent, except as otherwise agreed in writing between Debtor and Lender:

(a) The representations and warranties of Debtor contained herein and in the other DIP Loan Documents shall be true and correct in all material respects on and as of the date of the incurrence of such DIP Loan; and

(b) No Default hereunder or under any of the other DIP Loan Documents shall exist or would result from the incurrence of such DIP Loans; and

(c) The Debtor shall be in compliance with the Final DIP Order (or, with respect to Tranche A Loan, the Interim DIP Order), and such order shall be in full force and effect and shall not have been vacated, reversed, modified or rescinded.

SECTION 4. REPRESENTATIONS AND WARRANTIES OF DEBTOR.

The Debtor represents and warrants to the Lender that:

4.1 Existence, Qualification and Power; Consents; Compliance with Laws. The Debtor is (i) duly incorporated, organized or formed, and validly existing and in good standing,

under the Laws of the jurisdiction of its organization; (ii) duly qualified and in good standing under the Laws of each jurisdiction where its ownership, lease or operation of properties or the conduct of its business requires such qualification; (iii) has all requisite power and authority, licenses, authorizations, consents, permits and approvals to own or lease its assets and properties and carry on its business and, subject to entry of the Interim DIP Order or the Final DIP Order, to execute, deliver and perform its obligations hereunder and under the other DIP Loan Documents, and no approvals, consents, exemptions, authorizations or other action by or filing with any Governmental Unit is necessary or required in connection with the foregoing; and (iv) is in compliance with all Laws, orders, writs, injunctions and orders.

4.2     Authorization; No Contravention. Subject to entry of the Interim DIP Order or the Final DIP Order, the execution, delivery and performance by the Debtor of each of the DIP Loan Documents and the consummation of the transactions contemplated thereby (i) are within the Debtor's corporate or other powers; (ii) have been duly authorized by all necessary corporate or other organizational action; and (iii) do not and will not contravene the terms of the Debtor's organizational documents, conflict with or result in any breach or contravention of or the creation of any Lien (other than Permitted Liens) under any of the Debtor's material agreements or violate any material applicable Law.

4.3     Ownership of Property; Liens. The Debtor is the legal and beneficial owner of and has good and marketable title to the Collateral pledged by it free and clear of any Lien, except for Permitted Liens.

4.4     Taxes. Except as expressly set forth in the Debtor's schedules filed with the Court as of the date of this Agreement, the Debtor has timely filed all income and all other material tax returns and reports required to be filed, and has timely paid all Taxes and other amounts of federal, state, municipal, foreign and other taxes, assessments, fees and other governmental charges levied or imposed upon it or its properties, income or assets otherwise due and payable, and there are no claims being asserted in writing with respect to any such taxes.

4.5     Insurance. The properties and assets of the Debtor, including the Real Property, is insured in the manner provided in Section 5.2.

4.6     Secured Obligations. The provisions of the DIP Loan Documents, taken together with, and subject to the terms of, the Final DIP Order, are effective to create in favor of the Lender legal, valid and enforceable senior secured liens and security interests in all right, title and interest of the Debtor in the Collateral and all proceeds thereof as set forth in the Final DIP Order, and pursuant to the Final DIP Order no filing or other action will be necessary to perfect or protect such Liens and security interests.

4.7     Final DIP Order. The Debtor is in compliance with the terms and conditions of the Interim DIP Order or the Final DIP Order, as applicable, and such order is in full force and effect and has not been vacated, reversed or rescinded or, without the prior written consent of Lender, amended or modified, and no appeal of such order has been timely filed or, if timely filed, no stay pending such appeal is currently effective.

SECTION 5. AFFIRMATIVE COVENANTS.

The Debtor hereby agrees that, so long as any portion of the DIP Loan or other DIP Obligation remains outstanding and unpaid or any other amount is owing to Lender hereunder, the Debtor shall:

5.1 <u>Payment of Post-Petition Obligations; Maintenance of Property.</u> The Debtor shall pay, discharge or otherwise satisfy all post-Petition Date obligations and liabilities, including without limitation taxes, assessments and governmental charges or levies imposed upon or with respect to the Debtor or the Collateral or any part thereof, unless such assessments and charges are subject to a good faith contest adequately reserved for by the Debtor, and preserve and protect the Collateral in good order, repair and condition.

5.2 <u>Insurance.</u>

(a) Maintain with financially sound and reputable insurance companies insurance on all Collateral in at least such amounts and with only such deductibles as are usually maintained, and against at least such risks as are usually insured against in the same general area, by companies engaged in the same or a similar business and owning or leasing similar properties; and furnish to Lender, at its request, full information as to the insurance carried.

(b) Lender shall be named as an additional insured and as its interests may appear on all insurance maintained by the Debtor pursuant to <u>Section 5.2(a)</u> hereof.

5.3 <u>Books and Records.</u> Keep proper books of record and account in which complete and correct entries are made of all dealings and transactions in relation to the Debtor's business and activities and matters involving the assets of the Debtor and which permit financial statements to be prepared in substantial conformity with GAAP and all applicable Laws.

5.4 <u>Cash Accounts.</u> Deposit and maintain all proceeds of the DIP Loan in only such debtor-in-possession accounts as permitted under the Bankruptcy Code and in accordance with the Court's orders relating to the Debtor's use of bank accounts and cash management systems after the Petition Date.

5.5 <u>Visits and Inspections.</u> Promptly permit representatives of Lender, upon prior written notice to the Debtor, from time to time during normal business hours to (a) visit and inspect any property of the Debtor, including the Real Property, as often as Lender shall reasonably deem advisable, (b) make such inspections of, abstracts from and copies of the Debtor's books and records as Lender shall deem advisable, and (c) discuss with the Debtor's members, officers and the auditors of the Debtor, the Debtor's business, operations, assets, liabilities, financial positions, results of operations and business prospects as often as Lender shall deem advisable.

5.6 <u>Compliance with Law.</u> Comply in all material respects with all requirements of law applicable to the Debtor and the Collateral (including but not limited to requirements relating to the environment or hazardous or toxic substances) and the Bankruptcy Code.

5.7 Compliance with Final DIP Order. Comply with the terms and conditions of the Interim DIP Order or the Final DIP Order, as applicable.

5.8 Further Assurances. Execute and deliver to Lender such reasonable documents and agreements and take or cause to be taken such reasonable actions as Lender may from time to time reasonably request to carry out the terms and conditions of this Agreement and the other DIP Loan Documents and to perfect, maintain and protect Lender's security interest in the Collateral, including delivering to Lender all Collateral in which Lender's security interest may be perfected by possession together with such endorsements as Lender may request.

SECTION 6. NEGATIVE COVENANTS.

The Debtor hereby agrees that it shall not, directly or indirectly so long as the DIP Loan or any of the DIP Obligations remain outstanding and unpaid, or any other amount is owing to Lender hereunder or under any of the other DIP Loan Documents (it being understood that each of the permitted exceptions to each of the covenants in this Section 6 is in addition to, and not overlapping with, any other of such permitted exceptions except to the extent expressly provided), without the express written consent of Lender:

6.1 Debt. Create, incur, assume or suffer to exist any debt, except:

(a) Debt in existence on the date of this Agreement;

(b) Debt incurred under this Agreement and the other DIP Loan Documents; and

(c) Debt incurred by the Debtor in the ordinary course of business in the form of accounts payable and accrued expenses.

6.2 Limitation on Liens. Create, incur, assume or suffer to exist any Lien upon the Real Property or any of its other property, assets, income or profits, whether now owned or hereafter acquired, except Permitted Liens.

6.3 Alteration of Rights of Lender. Limit, affect or modify, or apply to the Court or support any application to the Court to limit, affect or modify, any of Lender's rights with respect to the DIP Obligations, including with respect to the Collateral and the validity and priority of Lender's Liens.

6.4 DIP Financing. Incur, or apply to the Court for authority to incur, or suffer to exist, any (i) indebtedness having the priority afforded by Section 364(c) or (d) of the Bankruptcy Code (including any Superpriority Claims) other than the financing provided for under this Agreement and the other DIP Loan Documents; or (ii) obligation to make adequate protection payments, or otherwise provide adequate protection, other than as contemplated by the Interim DIP Order or the Final DIP Order, or as may be required by order of the Court in connection with the provision of adequate protection to holders of Permitted Liens whose collateral is sold or otherwise disposed of or as to which Lender consents, provided, however, that on an interim basis, the Lender is prepared to accept the lien priority established by the Interim DIP Order entered in a form that is satisfactory to the Lender in its sole discretion.

6.5     Chapter 11 Claims. Except as permitted under the Final DIP Order, apply to the Court for the authority to incur, create, assume, suffer or permit any claim, Lien or encumbrance (other than Permitted Liens) against the Debtor, or any of its assets in the Chapter 11 Case to be pari passu with, or senior to, the Liens and claims of Lender granted and arising under the DIP Loan Documents.

6.6     Superpriority Administrative Expense. Create or permit to exist any Superpriority Claims (other than with respect to this Agreement or the Interim or Final DIP Orders).

6.7     Alterations. Undertake any material alterations or modifications to the Real Property without Lender's prior written consent.

6.8     Transfers. Transfer, directly or indirectly, any of its right, title or interest in, to or under any of the Collateral without the Lender's prior written consent.

6.9     Transactions with Affiliates.  Enter into any transaction of any kind with any Affiliate except in the ordinary course of business in accordance with all applicable Law and on terms which are fully disclosed to Lender in advance and are no less favorable to Debtor or such Affiliate than would be obtained in a comparable arm's-length transaction with an unrelated third party.

6.10    Restricted Payments.  Declare or pay any dividend on, or make any payment or distribution directly or indirectly of cash, assets, properties, rights, obligations or securities on account of any ownership interest in Debtor or any Affiliate, or make any payment, or purchase, redeem, retire, or otherwise acquire for value any ownership interest in Debtor or any Affiliate, or any warrants, rights or options to acquire any such ownership interest, now or hereafter outstanding.

SECTION 7. DEFAULT.

7.1     Default. In addition to the Events of Default under the Interim DIP Order and Final DIP Order, the following shall constitute a Default:

(a)     The Debtor fails to pay when and as required to be paid herein any amount of principal of any DIP Loan or (ii) within three (3) Business Days after the same becomes due in cash, any interest on any DIP Loan or any other amount payable hereunder or with respect to any of the other DIP Loan Documents; or

(b)     The Debtor fails to perform or observe any term, covenant or agreement contained herein required to be performed or observed by it; or

(c)     Any representation, warranty or statement of fact made or deemed made by Debtor herein or in the other DIP Loan Documents shall be incorrect or misleading in any material respect when made or deemed made; or

(d) The Court enters an order with respect to the Debtor dismissing the Chapter 11 Case or converting it to a case under chapter 7 of the Bankruptcy Code, or, without the prior written consent of Lender (i) appointing a trustee in the Chapter 11 Case; (ii) appointing a responsible officer or an examiner with enlarged powers relating to the operation of the Debtor's business (beyond those set forth in Section 1106(a)(3) or (4)) under Bankruptcy Code Section 1106(b); or (iii) reversing or modifying any of the Interim or Final DIP Orders without the consent of Lender; or

(e) The Debtor (i) fails to comply with any material terms of the Interim DIP Order or the Final DIP Order or (ii) seeks, or supports any action seeking, to challenge the Liens or claims of the Lender granted pursuant to the Interim or Final DIP Orders and the other DIP Loan Documents; or

(f) There occurs any Material Adverse Change, including without limitation, any impairment to the value of the Collateral which Lender, in good faith, deems will threaten timely payment in full of the DIP Loan; or

(g) The Court grants any superpriority administrative expense claim or Lien or enters any order granting relief from the automatic stay (if not in favor of Lender) with respect to any of the Collateral, except with the express written consent of Lender; or

(h) The Debtor proposes, enters into or seeks Court approval of (i) an agreement to sell all or substantially all of its assets under Section 363 of the Bankruptcy Code that does not provide for the repayment in full of the DIP Loans and the other DIP Obligations upon the closing of such sale; or (ii) a chapter 11 plan that does not provide for the repayment in full of the DIP Loans and the other DIP Obligations upon terms acceptable to the Lender.

7.2 <u>Notice of Default and Certain Remedies.</u> If any Default shall occur, Lender may provide written notice (a "**Notice of Default**") to the Debtor and the U.S. Trustee of such Default. If a Default shall have occurred and Lender shall have provided a Notice of Default, then, upon expiration of any applicable cure period, so long as any such Default shall be continuing, any of the actions set forth in the next sentence may be taken upon written notice by Lender to the Debtor and the U.S. Trustee. Lender may (A) without further order of the Court, declare the DIP Loan Commitment reduced to zero whereupon the DIP Loan Commitment and all obligations of Lender relating thereto shall be immediately terminated, (B) without further order of the Court, declare all or a portion of the DIP Loan (with accrued interest thereon) and all other amounts owing under this Agreement to be due and payable forthwith, whereupon the same shall immediately become due and payable, without further notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to accelerate, protest, or other formalities of any kind, all of which are hereby expressly waived by the Debtor, (C) foreclose or otherwise enforce any Lien, including without limitation the Mortgage, granted to Lender for the benefit of itself to secure payment and performance of the DIP Obligations in accordance with the terms of the DIP Loan Documents, and (D) exercise all other rights and remedies available at law or in equity. Except as expressly provided above in this <u>Section 7,</u> presentment, notice, notice of dishonor, notice of acceleration, notice of intent to accelerate, demand, protest and all

other notices of any kind are hereby expressly waived. Lender shall have no obligation to preserve rights to the Collateral or marshal any Collateral for the benefit of any person.

SECTION 8. MISCELLANEOUS.

    8.1    <u>Amendments and Waivers.</u> No DIP Loan Document nor any terms thereof maybe amended, supplemented or modified except in writing signed by Lender and Debtor.

    8.2    <u>Notices.</u> All notices, requests and demands to or upon the respective parties hereto to be effective shall be in writing, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered by hand, or three Business Days after being deposited in the mail, postage prepaid, or one Business Day after being entrusted to a reputable commercial overnight delivery service, or, in the case of electronic mail notice, when sent, addressed as follows in the case of the Debtor and Lender or to such other address as may be hereafter notified by such respective parties hereto:

    The Debtor:
        Axia Realty, LLC
        1790 Broadway, Suite 1700
        New York, New York 10019

    With a copy to:
        Tarter Krinsky & Drogin LLP
        1350 Broadway, 11th Floor
        New York, NY 10018
        Attn: Scott S. Markowitz, Esq.
        smarkowitz@tarterkrinsky.com

    Lender:
        Michael Katz Profit Sharing Plan
        107 Cherry Street
        Katonah, New York 10536
        michaelkatz@verizon.net

    8.3    <u>No Waiver; Cumulative Remedies.</u> No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by Law.

    8.4    <u>Survival of Representations and Warranties.</u> All representations and warranties made hereunder and in any document, certificate or statement delivered pursuant to or in connection herewith shall survive the execution and delivery of this Agreement and the making of the DIP Loan.

8.5     Counterparts. This Agreement and each other DIP Loan Document may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Delivery by facsimile or other electronic transmission of an executed counterpart of a signature page to this Agreement and each other DIP Loan Document shall be effective as delivery of an original executed counterpart thereof; provided that original signatures shall be promptly delivered thereafter, it being understood that the failure to request or deliver the same shall not limit the effectiveness of any document or signature delivered by facsimile or other electronic transmission.

8.6     Additional Grant of Lien. All DIP Obligations, contingent or absolute (including, without limitation, the principal thereof, interest thereon, and any costs and expenses owing in connection therewith) which may now or from time to time hereafter be owing by the Debtor to Lender under any of the DIP Loan Documents shall be secured as set forth in the Final DIP Order.

8.7     Governing Law. This Agreement and each other DIP Loan Document shall be governed by and construed in accordance with the law of the State of New York and, to the extent applicable, the Bankruptcy Code.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

DEBTOR

AXIA REALTY, LLC

By: _____
Name: Antonia Milonas
Title: Managing Member

LENDER

MICHAEL KATZ PROFIT SHARING PLAN

By: _____
Name: Michael Katz
Title: Trustee