REED SMITH LLP
Michael J. Venditto
599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
Fax: (212) 521-5450

*Attorneys for Cedro LLC, Neyor, LLC and
Silver Lining NYC, LLC*

**Hearing:** December 3, 2020 at 3:00 p.m.
**Objection Deadline:** Nov. 27, 2020 at 4:00 pm

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
| In re: | : | Chapter 11 |
| | : | |
| AXIA REALTY, LLC | : | Case No. 20-12511 (MG) |
| | : | |
| Debtor. | : | *Refers to ECF No. 21* |
---------------------------------------------------------------x

**LIMITED OBJECTION TO THE MOTION OF DEBTOR FOR A FINAL
ORDER PURSUANT TO SECTION 364(d) OF THE BANKRUPTCY CODE
AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001 AND 9014
AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING
SECURED BY A SENIOR LIEN ON THE DEBTOR'S REAL PROPERTY**

Cedro LLC ("**Cedro**"), Neyor, LLC ("**Neyor**") and Silver Lining NYC, LLC ("**Silver Lining**," and collectively, the "**Unit Owners**"), by their undersigned attorneys, for the reasons set forth herein, object to the Debtor's Motion ("**Motion**") for Interim and Final Orders Pursuant to Section 364(d) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001 and 9014 Authorizing the Debtor to Obtain Postpetition Financing Secured by a Senior Lien on the Debtor's Real Property [ECF No. 21] and respectfully represent as follows:

1. The Unit Owners, each an owner of a residential condominium unit in the building at 40 East 72nd Street, New York, New York (the "**Building**"), are parties to purchase and sale agreements (the "**Purchase Agreements**") with the Debtor, Axia Realty, LLC ("**Debtor**").

2. Between October 2016 and April 2017, each of the Unit Owners paid the Debtor in excess of $11 million to purchase one of the condominium units. The remaining condominium apartments (the "**Debtor Units**") are owned by the Debtor.[1]

3. The Unit Owners did not object to interim financing or the entry of an interim financing order. However, as the Unit Owners have previously advised this Court, they have concerns about the proposed loan, which they had hoped could be resolved prior to the final hearing on the Motion. Those concerns have been addressed in part. However, as detailed below, the Unit Owners have unresolved concerns and therefore object to the Motion and, unless their concerns are resolved, entry of the proposed form of final order.

**Factual Background**

4. The Debtor is the sponsor of a condominium offering plan ("**Offering Plan**") filed with the Real Estate Financing Bureau of the New York State Attorney General's Office (the "**Attorney General**"). That Offering Plan, which is incorporated into each of the Purchase Agreements, requires the Debtor to pay all common charges, real estate taxes, assessments and other expenses allocable to any condominium units owned by the Debtor. The Offering Plan also requires the Debtor to diligently complete the construction of the common areas of the Building and obtain a permanent certificate of occupancy within two (2) years of closing a unit sale.

5. Since May 2018, when common charges began coming due, the Debtor has failed to pay the common charges for the Debtor Units. Further, construction and repairs of the common areas of the Building and Unit Owners' chimneys have not been completed; a

---

[1] Three of the Debtor Units (Nos. 1, 1A, and 2) are vacant. However, the Debtor's principals occupy the triplex penthouse, designated as Unit 6, although they have not paid any of the common charges allocated to that condominium unit.

permanent certificate of occupancy has not been obtained; and real estate taxes on the Debtor Units remain unpaid.

6. In May 2019, with the Building unable to meet payroll or pay for essential services (*e.g.* insurance, heat and electricity in common areas, and elevator maintenance), the Unit Owners each pre-paid two months' of common charges to cover these necessary expenses. Since that time, the Unit Owners have continued to prepay common charges to cover the shortfall resulting from the Debtor's failure to meet its obligations.

7. On May 30, 2019, the Unit Owners commenced a proceeding against the Debtor in the Supreme Court of the State of New York, County of New York (the "**State Court**"), captioned *Cedro LLC et al. v. Axia Realty, LLC et al.*, (N.Y. County Index No. 653182/2019 (the "**State Court Action**"). In that action, the Unit Owners asserted claims both individually and derivatively, on behalf of the Condominium. While most of these claims remain outstanding, on December 4, 2019, the State Court granted partial summary judgment against the Debtor for unpaid common charges due to the Condominium, which at the time totaled $205,502.44 (the "**Judgment**"). To date, the Judgment remains unpaid and on the Petition Date, the Debtor's accrued debt to the Condominium totaled $461,782.89.

**The Financing Motion**

8. Following a hearing on November 19, 2020, this Court entered the Interim Order[2], which authorized an interim borrowing "to be used solely to pay $100,000.00 on account of unpaid common charges due to 40 East 72nd Street Condominium (the 'Condominium') which the Condominium shall be permitted to use for ordinary expenses

---

[2] "**Interim Order**" refers to the Interim Order Pursuant to 11 U.S.C. §§ 105, 362, and 364(d), and Fed. R. Bankr. P. 2002, 4001 and 9014: (i) Authorizing the Debtor to Obtain Post-Petition Senior Secured Financing; (ii) Modifying the Automatic Stay; and (iii) Granting Related Relief, entered on November 20, 2020 [ECF Dkt. No. 38].

associated with operations of the Condominium including heat, water, payroll, electricity, elevator maintenance, HVAC repair, and insurance premiums" Interim Order ¶ 2 at 5.

9. On November 24, 2020, the Debtor utilized the funding authorized by this Court to make a partial payment of $100,000, reducing its arrearages to $361,782.89. However, by the time of the final hearing on the Motion, that indebtedness will have increased by an additional $25,051.48, which represents the common charges on the Debtor Units for the month of December.

10. The Debtor clearly needs funds to preserve the Debtor Units, as it concedes in the supporting declaration of Antonia Milonas:

> the Debtor has no cash and needs to obtain funds in order to pay common charges which have been outstanding for approximately two years and constitute liens against the Debtor's condominium units. The Debtor also requires funds in order to pay real estate taxes and other obligations which it has as a sponsor of the condominium offering plan.

Declaration of Antonia Milonas in Support of DIP Motion [ECF 22] at ¶ 6 at 2.

11. Despite this acknowledgement, the Unit Owners have concerns about the terms of the proposed financing. These concerns have been raised in discussions with Debtor's counsel but have not been fully resolved. These concerns center on the adequacy of the Debtor's proposed budget and its ability to exit both the DIP Facility and this Chapter 11 case.

12. The Unit Owners understand that the Debtor will proffer a seven (7) month budget demonstrating the need to draw both Tranche A and Tranche B of the DIP Facility prior to July 1, 2021. The Unit Owners believe that the Debtor's budget may under-estimate certain categories of expenses, but even utilizing the Debtor's overly conservative cost estimates, the Debtor will only have $400,000 of availability by the end of this budget.

13. The proposed funding might be adequate if the Debtor contemplated repaying the DIP Facility or exiting Chapter 11 prior to that date. However, the Unit Owners understand that

the proposed final order will not contain milestones that might ensure that the Debtor's Chapter 11 case proceeds in a structured and expeditious manner towards either confirmation of a plan or a sale of the Sponsor Units. Without some exit process, the Debtor's estate is likely to become administratively insolvent before the term of the loan concludes in 2022. *See*, DIP Loan Agreement § 2.2 at 6.[3]

14. For that reason, the Unit Owners agree with several other parties that the Debtor needs to initiate a process to sell the Sponsor Units. However, the Debtor is currently prohibited by New York State law from offering any of the Sponsor Units for sale. Before the Debtor can market the Sponsor Units, it must amend the Offering Plan and that amendment must be accepted by the Attorney General.[4] This is a process that the Debtor has avoided undertaking for nearly two years.

15. The Debtor needs to remedy this regulatory deficiency so it can commence the process of marketing the Sponsor Units. Simply providing the Debtor with funding will not advance its restructuring; the funding must be coupled with a meaningful process for emerging from the stasis in which the Debtor has wallowed for the last two years.

**WHEREFORE**, the Unit Owners object to the Motion and respectfully request that the

---

[3] "**DIP Loan Agreement**" refers to the form of Debtor-in-Possession Loan Agreement, which is annexed as Exhibit D to Motion. [ECF Doc. No. 214-1]
[4] *See*, Motion ¶ 10 at 4.

Court deny the Debtor's request for final approval and the authorization to borrow any additional funds on the terms set forth in the Motion.

Dated: November 27, 2020

                                              Respectfully submitted,
                                              REED SMITH LLP

                                              By: */s/ Michael J. Venditto*
                                                      Michael J. Venditto
                                                      599 Lexington Avenue
                                                      New York, NY 10022
                                                      Tel: (212) 521-5400
                                                      Fax: (212) 521-5450

                                            *Attorneys for Cedro LLC, Neyor, LLC*
                                            *and Silver Lining NYC, LLC*